UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 24-14153-CIV-CANNON



KIMBERLY MARASCO,
Plaintiff,

v.

TAYLOR SWIFT PRODUCTIONS, INC.
Defendant

PLAINTIFF'S RESPONSE TO DEFENDANT'S

REPLY TO DISMISS THE SECOND AMENDED COMPLAINT

**Copyright Law**

There can be several copyrights at play when an artist creates music: that of the song composition (music, lyrics, arrangement, etc.), that of the recording itself (Universal Music Group) and film production (Taylor Swift Productions, Inc). Anyone one, or all three of these, can be litigated in a copyright claim should infringing material be used in a way that generates profits while not receiving permission for use of the works by the original creator. A court will look at how the work is used, for example, for commercial or nonprofit educational use, the nature, and the amount of the copyrighted work used. Taylor Swift Productions, Inc. produces the visual media which includes digital (films, music videos, CD's records, etc.), advertising, performances, and other art while receiving a portion of profits from the works at play (http://www.djcounsel.com/copyright-101-every-recorded-song-has-at-least-two-copyrights/)

Taylor Swift Productions independently produced the concert film *Taylor Swift: The Eras Tour*, directed by Sam Wrench and distributed globally in cinemas by AMC and Cinemark Theatres.[85][86] Released on October 13, 2023, the film received universal acclaim from critics,

who praised for its cinematography, spectacle, and energy. Taylor Swift Productions produced the music videos for Swift's songs "The Man", "Cardigan", "Willow". Fortnight" and "I Can Do It with a Broken Heart". All of these songs were used in the concerts and films produced by Taylor Swift Productions, where they generated profits from the use of the Plaintiff's works. Taylor Swift Productions also produced the documentary feature *Folklore: The Long Pond Studio Sessions*, released on November 25, 2020. The documentary features Swift performing all of the 17 tracks of her eighth studio album, *Folklore* (2020), The studio's outputs (Taylor Swift Productions, Inc.) have received various awards, including a Grammy Award, four MTV Video Music Awards for Video of the Year, an Art Directors Guild Award, a Gracie Award, an Eddie Award, and a Hollywood Critics Association Film Award. Its films *Taylor Swift: Reputation Stadium Tour* (2018), *Folklore: The Long Pond Studio Sessions* (2020), *All Too Well: The Short Film* (2021), and *Taylor Swift: The Eras Tour* (2023). Taylor Swift Productions, Inc. produced the "Eras Tour" which includes every single song the Plaintiff mentioned in her complaint. Whenever a company or a person generates profits off someone else's work, that entity can be liable for copyright infringement (https://en.wikipedia.org/wiki/Taylor_Swift_Productions).

**Ideas vs. Original Expression**

When a songwriter composes lyrics and music, it is an expression of their ideas in a fixed tangible form. Ideas are not copyrightable, but they can be protected when they are in a material form. Merely thinking about a song is not something you can copyright, but when you write the lyrics or music, you can protect your intellectual property with copyright. Copyright protection means no one else can use or profit from your work without your permission. Even if you don't have a hit song, you don't want others to profit from your intellectual property.

This protection is crucial for fostering creativity and ensuring that creators are rewarded for their efforts (https://lawanchor.com/the-future-of-copyright-law-in-the-digital-age/)

### Access in the Digital Age

Adapting copyright law to the digital age is essential for maintaining a balanced and fair system of protection The internet has made it possible to share content instantly and globally. The ease of copying and sharing digital files challenged existing copyright frameworks, prompting the need for new legal approaches to address the unique issues posed by digital technologies (https://lawanchor.com/the-future-of-copyright-law-in-the-digital-age/).

In 1998, Congress passed the Digital Millennium Copyright Act (DMCA), which amended U.S. copyright law to address important parts of the relationship between copyright and the internet. The three main updates were (1) establishing protections for online service providers in certain situations if their users engage in copyright infringement, which allows copyright owners to inform online service providers about infringing material so it can be taken down; (2) encouraging copyright owners to give greater access to their works in digital formats by providing them with legal protections against unauthorized access to their works; and (3) making it unlawful to provide false copyright management information (for example, names of authors and copyright owners, titles of works) or to remove or alter that type of information in certain circumstances (https://en.wikipedia.org/wiki/Digital_Millennium_Copyright_Act)

February 1, 2025

Respectfully submitted,

*/s/ Kim Marasco/*

Kimberly Marasco